IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| SLAUGHTER MOTIN OBET, as Personal Representative of the Estate of Isaiah Obet, and on his own behalf,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF AUBURN, WASHINGTON, and OFFICER JEFFREY NELSON,<br><br>Defendants. | No. 20 CV 883<br><br>COMPLAINT<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff, SLAUGHTER MOTIN OBET, as Personal Representative of the ESTATE OF ISAIAH OBET, and on his own behalf, by and through his attorneys, alleges as follows:

### INTRODUCTION

1. Isaiah Obet—a loving son, brother, and integral member of his community—should be alive today. Instead, at the age of 25, Isaiah's life was tragically and unjustifiably ended through an act of homicide by the City of Auburn Police Department Officer Jeffrey Nelson.

2. Officer Nelson should not have been on patrol the day he killed Isaiah. Prior to Isaiah's death, Nelson had engaged in a pervasive pattern of excessive force and misconduct that the City of Auburn not only ignored but specifically endorsed.

COMPLAINT - 1

**LOEVY & LOEVY**
100 S. KING ST, #100-748
Seattle, Washington 98104
T: 312-243-5900, Fax: 312-243-5092

Instead of disciplining, re-training, or otherwise discouraging Nelson, the City tacitly approved his methods, and through its policies, practices and customs, caused this tragedy.

3. Though nothing can ever bring Isaiah Obet back, and no form of redress can fully compensate his loved ones for his loss, this action seeks to hold accountable those responsible for the violations of constitutional and state-law rights of not only Isaiah Obet, but others harmed by the Defendants actions: Isaiah's family, friends, and, in the end, all residents of the City of Auburn.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C §§ 1331 and 1343.

5. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, Defendant Nelson resides in this judicial district and the events and omissions giving rise to the claims asserted herein all occurred within this district.

## PARTIES

7. Slaughter Motin Obet is the brother of the late Isaiah Obet, the Personal Representative of the Estate of Isaiah Obet, a former resident of Auburn, Washington now living in Oregon. Slaughter Obet is a party to this action as the personal representative of Isaiah Obet's estate and further asserts claims on his own behalf.

8. Isaiah Obet was twenty-five (25) years old when he was killed by Defendant Jeffrey Nelson.

9. Defendant Jeffrey Nelson is a police officer for the City of Auburn. At all times relevant to this action, Defendant Nelson was acting under color of law

and as an agent of the City of Auburn, and acting within the scope of his employment.

10. Defendant City of Auburn is a municipal corporation located in the Western District of Washington, which operates the Auburn Police Department (the "APD" or "Department"), and sets city-wide policy for the conduct of police officers employed by the Department.

## FACTS

### The Killing of Isaiah Obet

11. On June 10, 2017, at approximately 12:20pm, Auburn dispatch received a call of a man acting strangely in North Auburn near 23nd Street, and possibly holding a small pocket knife.

12. This person was later identified as Isaiah Obet.

13. Around the same time, Defendant Nelson was working as a K-9 handler, and was patrolling in the area.

14. When Defendant Nelson heard dispatch communicate the incident, he began driving his marked APD patrol car towards the reporting party's address.

15. At approximately 12:25pm, Defendant Nelson claims he saw Isaiah walking westbound on 21st Street. Nelson was driving in the opposite direction.

16. Defendant Nelson claims he lost sight of Isaiah, turned his car around, and eventually found Isaiah at the intersection of 21st and D Street.

17. Defendant Nelson pulled over and parked on the side of the road.

18. After Defendant Nelson pulled over, Nelson claims he saw Isaiah ran towards an SUV turning right on D Street, try to open the driver's side door with his left hand, and begin to knock on the driver's side window with this right.

19. Isaiah was not saying anything, but was obviously exhibiting signs of mental distress.

20. Defendant Nelson then exited his patrol car and approached Isaiah.

21. As he did so, and before Isaiah could have responded to the officer's presence, Defendant Nelson released his K-9 dog from his vehicle and decided to sic the dog on Isaiah.

22. The K-9 followed orders, attacked Isaiah, and latched on to his arm.

23. While Isaiah was being attacked by the dog, he did not exhibit any threatening behavior to Officer Nelson or anyone else. Instead, he was trying to dislodge the dog that had latched on to his arm

24. As Isaiah was struggling with and being subdued by the K-9, Defendant Nelson unholstered his service weapon—a .45 caliber, semi-automatic pistol—instead of the taser that he was armed and equipped to use. Nelson pointed the firearm at Isaiah.

25. These acts were unreasonable, negligent, and reckless; failed to follow accepted police practices; and unreasonably escalated the likelihood that the encounter would result in a use of unnecessary deadly force.

26. At that time, Obet posed no threat to Defendant Nelson to anyone else.

27. Nonetheless, Defendant Nelson fired his gun. This shot hit Isaiah in the torso, but was likely non-fatal.

28. Isaiah fell to the ground, having at this point been shot once and severely bitten by a trained police dog.

29. Isaiah did not attempt to stand up. He did not attempt to flee. Instead, at this point, Isaiah was completely subdued by Nelson and his dog.

30. Lying on the ground, with a bullet wound to his torso, and a K-9 having mauled him, Isaiah posed no threat to Defendant Nelson or anyone else.

31. Defendant Nelson knew that Isaiah posed no threat and had been subdued and "taken down" by his prior actions.

32.     Nonetheless, as Isaiah lay on the ground, Defendant Nelson walked over to Isaiah, aimed his gun at him a second time, and fired a shot directly into Isaiah's head as he stood above him.

33.     This gunshot was completely unjustified.

34.     This gunshot, which perforated Isaiah's skull and brain, was fatal.

35.     After the dog had latched to his arm, at no point was it reasonable for Nelson to believe that Isaiah posed an imminent threat of serious bodily harm to Nelson or anyone.

36.     At no point after the dog had latched to his arm, did Isaiah do anything that a reasonable officer would believe posed an imminent threat of death or serious bodily harm sufficient to justify the use of deadly force by Defendant Nelson.

37.     Indeed, Isaiah's death via Defendant Nelson's second shot shocks the conscience. It was unconscionable for Defendant Nelson to kill Isaiah Obet by shooting him execution style in the head, particularly after Isaiah had already been shot and was lying on the ground.

38.     Within minutes of Defendant Nelson's second shot, various APD Officers and first responders swarmed the scene, but it was too late. Isaiah Obet has already passed, and was pronounced dead at the scene.

**Defendant Jeffrey Nelson's History of Excessive Force**

39.     During his time as an APD officer, Defendant Nelson has demonstrated an extensive history of excessive force.

40.     In the past nine years, he has been involved in at least sixty-five use of force incidents. Many of those incidents occurred prior to Isaiah's death in 2017.

41.     Shockingly, of the five officer-involved shootings carried out by APD officers since 2011, Defendant Nelson committed <u>three</u> of them.

42. This first fatal shooting occurred in 2011, when Defendant Nelson shot and killed an Auburn citizen—Brian Scaman—during a traffic stop. Like Isaiah, Defendant Nelson shot Mr. Scaman in of the head.

43. Defendant Nelson was placed on administrative leave following this use of deadly force, as was routine for officer-involved shootings within the APD. He was not otherwise disciplined, reassigned, or retrained as a result.

44. In fact, upon information and belief, Defendant Nelson was not disciplined, reassigned, or retrained following any of his many use of force incidents. As a consequence of the Department's lack of disciplinary action, Defendant Nelson understood that, pursuant to the policies, practices, and customs of the Department, he could use unconstitutional force against citizens with virtual impunity.

45. That is precisely what happened during the killing of Isaiah Obet. Defendant Nelson used excessive, deadly force against Isaiah.

46. After the shooting, Officer Nelson later falsely claimed that Isaiah had advanced on him before the first shot, and even continued to threaten him with a pocket knife after having been shot once and while he was on the ground. Nelson also claimed that the dog bit Isaiah after the second shot, rather than before any shooting began.

47. These statements were untrue.

48. In addition, Nelson's account conflicts with uninvolved witness statements, confirming that the dog had been sic-ed on Isaiah before any shots were fired, and that Obet was on the ground, not threatening the officer, when the second shot was fired.

49. Nelson's account, described above, was also contradicted by the physical evidence.

50. Nelson's account, described above, was also inconsistent with his first statements, made immediately after the shooting.

COMPLAINT - 6

LOEVY & LOEVY
100 S. KING ST, #100-748
Seattle, Washington 98104
T: 312-243-5900, Fax: 312-243-5092

51. Nonetheless, Nelson knew that, pursuant to the Department's customs and practices, his use of deadly force would not be met with discipline or reprimand, and that his actions would be ratified by the department, even if they were not corroborated by witnesses or physical evidence, and even if they were internally contradictory.

52. The City of Auburn took no steps to address or even attempt to rectify the discrepancies between Nelson's account, on the one hand, and the witness statements and physical evidence, on the other.

53. The City of Auburn also took no steps to address or even attempt to rectify the discrepancies between Nelson's multiple accounts.

54. Having again been exonerated, and the Department failing to have taken any corrective steps, Defendant Nelson remained on the force and emboldened.

55. Unsurprisingly, Nelson would use unjustified deadly force again. In 2019, Defendant Nelson shot and killed Jesse Sarey with two distinct, familiar gunshots.

56. As with Isaiah, Sarey was completely subdued after having been shot.

57. Nonetheless, Nelson again fired a second, unconscionable and fatal, gunshot.

58. Despite the Department's awareness of Defendant Nelson's predilection for excessive and deadly force, he remains an officer in good standing.

**Auburn Is Responsible for Isaiah Obet's Unjustified Death**

59. Defendant Nelson's history of force-incidents put the City of Auburn on notice that he was likely to use force that would be excessive and deadly.

60. In fatally shooting Isaiah Obet, Defendant Nelson failed to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force, including by unholstering and pointing his firearm after his K-9 had already

latched onto Isaiah, by firing the first shot at Isaiah even though he was not threatening the officer, and then by firing a second fatal shot after Isaiah had been subdued and was laying on the ground already shot once.

61. These actions were unreasonable, negligent, and reckless, and they failed to follow accepted police standards. The City of Auburn is liable for these negligent actions by its officers, which foreseeably resulted in the unreasonable use of deadly force on Isaiah Obet.

62. The City of Auburn was deliberately indifferent to the fact that its inadequate and reckless policies, procedures, customs and supervision were the moving force behind Nelson using unnecessary and unreasonable force.

63. Furthermore, the City of Auburn has failed to implement any mechanisms that would have prevented Nelson's excessive acts, including but not limited to providing minimally adequate supervision at an appropriate command level, and enforcing established policies and rules.

64. Ultimately, the City of Auburn should not have retained Defendant Nelson as a sworn police officer. After they hired him, the City deliberately ignored numerous red flags and encouraged his misconduct, without attempting to supervise, retrain, reassign, or discipline him in any way.

65. The City's failure to train, discipline, or supervise Defendant Nelson led to Isaiah Obet's death, in violation of his constitutional rights.

66. The City of Auburn's ratification of this shooting continues and its failure to take corrective action reflects its deliberate indifference to the danger of constitutional violations and physical harm its policies and practices create.

67. Upon information and belief, City of Auburn has not implemented any changes that would fix the flaws in the policies and customs described above.

68. Auburn's policymakers' refusal to scrutinize the inconsistent statements of Defendant Nelson and contrast that to the physical evidence is part

and parcel of the City's continued deliberate indifference to the risks created by its inadequate training, supervision, and discipline of police officer, like Nelson, who use excessive force or foreseeably create situations likely to lead to great bodily harm, injury, or even death.

## Plaintiffs' Immense Damages

69. Isaiah was a son, brother, and integral member of his community when he was killed, at only 25 years old. He had decades of life left to live, and the wide landscape of his life ahead of him. However, because he was killed, he will never have a chance to pursue his life's ambitions, to raise a family, or plan for the future. The loss of his life itself was immeasurable.

70. The Defendants' actions imposed substantial harm on Isaiah Obet during the period of time after he was shot by Defendant Nelson until he ultimately passed way. The excruciating pain and fear Isaiah felt during his final moments is unquantifiable.

71. As a proximate result of the Defendant's unlawful conduct described above, the Estate of Isaiah Obet has incurred medical and funeral expenses, lost earnings and earning capacity, suffered physical and emotional pain, suffering, and disfigurement, lost liberty, lost the enjoyment of life. In addition, both the Estate of Isaiah Obet and Slaughter Obet have suffered other special and general damages.

# CLAIMS

## Count I – Fourth Amendment

72. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

73. As described in the preceding paragraphs, the conduct of Defendant Jeffrey Nelson toward Isaiah Obet constituted excessive force in violation of the Fourth Amendment of the United States Constitution.

74. The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others.

75. The conduct described in this Count was undertaken pursuant to the policies, practices, and customs of City of Auburn, such that the City is liable in the following ways:

   a. The City, through its tacit approval of the Defendant Nelson's actions, has ratified his conduct, and thereby shown that Defendant Nelson acted pursuant to and in a manner consistent with the policies, customs, and practices of the City.

   b. As a matter of both policy and practice, the City encouraged, and was thereby the moving force behind, the misconduct at issue here by failing to adequately train, supervise, control, and discipline its officers such that its failure to do so has manifested deliberate indifference;

   c. As a matter of both policy and practice, the City of Auburn has facilitated the very type of misconduct at issue here by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby foreseeably leading its officers to believe that their actions will never be meaningfully scrutinized and, in that way, directly encouraging future uses of excessive deadly force such as those Plaintiff complains of;

    d. The Auburn Police Department's failure to meaningfully investigate police misconduct and control its officers is further illustrated by its handling of Officer Nelson's many prior use-of-force incidents, including this shooting. Officer Nelson was not disciplined for any of these incidents, and has remained on full active duty throughout his career;

    e. In fact, the Auburn Police Department encouraged Defendant Nelson to feel he could act with impunity by repeatedly declining to discipline him for infractions of many kinds throughout his career;

    f. The City of Auburn should be held liable for the unconstitutional actions of its officers engaged in as agents of the City, consistent with the common law as understood in 1871.

76. As a result of City of Auburn's actions, policies and practices, and the unjustified and unreasonable conduct of Defendant Nelson, Plaintiffs suffered injuries, including pain, suffering, emotional distress, and death.

## Count II—Fourteenth Amendment (Due Process)

77. Each paragraph of this Complaint is incorporated as if fully restated herein.

78. In the manner described more fully above, Defendant Nelson, under color of law and within the scope of him employment, shot and killed Isaiah Obet, depriving him of liberty, in violation of his rights secured by the Fourteenth Amendment.

79. As described more fully above, Defendant Nelson's second gunshot shocks the conscience and involved truly egregious and unreasonable actions by him, which caused the death of Isaiah Obet.

80. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the life of Isaiah Obet.

81. As a result of Defendant Nelson's misconduct described in this Count, Isaiah suffered injuries, including but not limited to physical injury, loss of liberty, emotional distress, and ultimately death.

### Count III — State Law, Negligence

82. Each of the paragraphs of this Complaint is incorporated as if fully stated here.

83. The City of Auburn, through its officers, owes a duty of care to persons with whom they foreseeably interact in a planned, police-initiated operation involving the likely use of deadly force, to take reasonable care so not to cause foreseeable harm in the course of such law enforcement interactions.

84. The City of Auburn owed such a duty to Isaiah Obet and the actions of its agent and officer, Defendant Nelson, breached that duty.

85. This breach proximately caused Isaiah Obet's severe injury and death, as described and alleged above.

86. The City of Auburn is liable to the Estate of Isaiah Obet for the negligent actions of its officers which proximately caused him injury and death.

87. The City of Auburn is liable to Plaintiff Slaughter Obet for the deliberately indifferent, reckless and negligent actions of its officer which proximately caused injury to his brother and destroyed their relationship.

### Count IV—State Law, Assault and Battery

88. Each of the paragraphs of this Complaint is incorporated as if fully stated here.

89. In the manner described more fully above, Defendant Nelson intentionally and impermissibly harmed, wounded, and ultimately killed Isaiah Obet, actions with amount to assault and battery under Washington law.

90. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

91. As a result of these actions, Isaiah Obet suffered severe injuries, including physical pain, emotional distress, and ultimately death.

92. This Count is brought by the Estate of Isaiah Obet, by personal representative Slaughter Obet.

### Count V—State Law, Survival

93. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

94. In the manner described more fully above, Defendant Nelson's fatal gunshots ultimately caused the death of Isaiah Obet.

95. The misconduct described in this count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

96. The Defendant Officers' actions as described in this Complaint were a substantial factor in bringing about the injuries described in this Count, and without those actions, these injuries would not have occurred.

97. As a result of these actions, the Estate of Isaiah Obet incurred severe economic damages, including burial and funeral expenses, permanent loss of decedent's earning power, as well as general damages to the decedents estate.

98. This Count is brought by the Estate of Isaiah Obet, by personal representative Slaughter Obet.

**Count VI—State Law, Wrongful Death**

99. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

100. In the manner more fully described above, Defendant Nelson intentionally and unjustifiably caused the death of Isaiah Obet. Isaiah Obet therefore (as alleged by counts I-V above) a valid claim for damages against Defendant Nelson at the time of his death.

101. As a consequence, Plaintiff Slaughter Obet suffered, and continues to suffer, significant emotional distress and harm, including but not limited to the loss of society and companionship with Isaiah Obet.

102. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

103. This Count is brought by the Estate of Isaiah Obet, by personal representative Slaughter Obet, and by Slaughter Obet on his own behalf.

**Count VIII—State Law, Outrage**

104. Each paragraph of this Complaint is incorporated as if restated fully herein.

105. In the manner described more fully above, by causing the death of Isaiah Obet, the Defendants intended to cause both physical and emotional distress.

106. In so doing, Defendant Nelson's conduct was extreme and outrageous and caused Isaiah Obet severe, disabling physical distress, emotional distress, and ultimately death.

107. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

108. This Count is brought by the Estate of Isaiah Obet, by personal representative Slaughter Obet.

### Count VIII—State Law, Indemnification

109. Each paragraph of this Complaint is incorporated as if restated fully herein.

110. In committing the acts alleged in the preceding paragraphs, Defendant Nelson acted at all relevant times within the scope of his employment for City of Auburn.

111. As a result, pursuant to State Law, City of Auburn must indemnify the Defendant Officer for any judgment against him.

### Count IX— *Respondeat Superior*

112. Each paragraph of this Complaint is incorporated as if restated fully herein.

113. In committing the acts alleged in the preceding paragraphs, Defendant Nelson acted at all relevant times within the scope of their employment for City of Auburn.

114. Defendant City of Auburn, as principal, is liable for all torts, including Counts III-VI above, committed by its agents. City of Auburn, as principal, should also be liable for the constitutional violations committed by its officers, pursuant to the common law as understood in 1871, and because by law and City ordinance it is wholly responsible for providing the defense of individual Defendant Officers and for indemnifying them against any judgment or verdict that may result.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants CITY OF AUBURN and JEFFREY

NELSON, awarding compensatory damages and attorneys' fees, as well as punitive damages against JEFFREY NELSON, and, in entering liability against the CITY, Plaintiff seeks equitable injunctive relief, as well as any other relief this Court deems just and appropriate. and

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

DATED this 8th day of June, 2020.

LOEVY & LOEVY

By:                            
David B. Owens, WSBA #53856
*Attorney for Plaintiff*

David B. Owens
LOEVY & LOEVY
100 S. King Street, Suite 100
Seattle, WA 98104
david@loevy.com

Mariah Garcia*
LOEVY & LOEVY
311 N. Aberdeen Street, 3FL
Chicago, IL 60607
mariah@loevy.com
*motion for admission *pro hac vice* forthcoming